The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case for argument this morning is 19-2423, Waterblasting v. Iancu. Mr. Lockton, whenever you're ready to begin. Thank you, Your Honor, and may it please the court, this is Andrew Lockton appearing on behalf of the appellant, Waterblasting, LLC. Your Honor, the final written decision should be reversed and remanded for at least three reasons. First, it fails substantial evidence review because its findings are based only on conclusory statements, untethered from the references, provided by a biased expert, the petitioner's owner, Mr. Booz. Second, even with the conclusory assertions from Mr. Booz, the final written decision fails substantial evidence review because there are certain limitations which lack any evidence in the record. And finally, the board legally erred in its teaching away analysis, and under the correct analysis, the only record evidence is that the primary reference teaches away from the invention claimed in the 116 patent. As addressed in the briefing, Claim 1 is illustrative for the issues presented here today. Critical limitations to that claim are that the 116 patent claims a two-vehicle, ultra-high water pressure cleaning system for removing roadway markings. The components of the claimed invention are distributed between the two-vehicle system. The secondary vehicle, the tractor as it's sometimes referred to in the record, contains an articulating link which positions a mobile blast head which allows the system to be precise for removing roadway markings. And the primary vehicle, sometimes referred to as the truck, contains a liquid reservoir, the sump, which collects the liquid and debris from the road. Mr. Laughlin, this is Judge Crouse. Let me just interrupt you for a moment. Starting at your final point, which was the teaching away point, where is the teaching, I assume you're talking about Clemens. And my understanding of the record is Clemens doesn't discuss removing pavement markings, but I don't understand how you get from a failure to discuss something to a teaching away under our case law. So can you explain that to me? Absolutely, Chief Judge. The board looks only to Clemens, which it sounds like is the discussion that we're having right now. And I agree, Clemens is silent in itself. But under the court's case law, that's only one of two possible tests, and it's the inappropriate test given the record before us. Under the Moutet case, which is also repeated recently in the telephonic Tia Bullegat L.M. Erickson v. TCL case, the correct analysis for a teaching away is when either a person of ordinary skill in the art reading the reference would be discouraged from following a path that is actually set out in the reference, or the alternative test is that a skilled artisan reading the reference would be led in a divergent direction from the path that was taken by the applicant. Clemens doesn't set out the path that it's being used for, and so looking for a discrediting of that path is the inappropriate test. That's the Fulton test that the board applied. Under the correct test, we would actually look to what the petitioner's expert, Mr. Booth, testified about how a skilled artisan reading Clemens would view it. In his testimony, the skilled artisan reading Clemens would not be motivated to create a road marking removal device. The board didn't look to that. They didn't consider the evidence of what a skilled artisan reading Clemens would understand and the direction. Is there any language in Clemens that you rely on for that point, or is it exclusively the testimony you just referred to? Can you point anything in Clemens that gets you to a teaching away? I don't rely on any of the language in Clemens. I rely on the testimony of the petitioner's expert, and the reason is because under the Fulton test, Clemens would have had to set out a path of roadway marking removal and then discredit it for that test to be the appropriate analysis. Clemens is silent. It doesn't set out a test. We look for discrediting when the reference itself actually teaches something, and counsel or the patent applicant is attempting to argue that even reading what's taught in a reference, a skilled artisan would be led in a different direction because of a discrediting. Here, we simply have silence in Clemens, and the expert testified that a skilled artisan reading it would be led in a different direction. This is Judge Bryson. When you say led in a different direction, do you mean simply that the person of skill in the art reading the reference would not be motivated to implement that reference either alone or in combination in a way that achieves the invention? Yes. If I could clarify, I guess, a little bit of the way I understood the question. I mean it in the sense, Judge Bryson, that what we have in the record is that the expert testified that a skilled artisan reading Clemens would not be motivated to create a roadway marking removal system. They would look at Clemens and look for something else. Now, this also dovetails into a lot of our motivation to combine arguments, where it addresses the point that the expert testified that only after a skilled artisan had the motivation to perform the function of the 116 patent would they then look to Clemens and combine it with the other prior art. So it sounds like to me you're saying that if a reference does not motivate a combination or the achievement of the invention, then it teaches away. What I'm saying is that in most cases the issue is going to be that we won't have a record of the petitioner or patent challenger admitting that a skilled artisan would go in a different direction reading a reference. But I do agree with the basic premise of your question that the test is if a skilled artisan is reading a reference and upon reading that reference they would go in a direction divergent from what is taken in the challenged patent, in this case the 116 patent, then it is teaching away. The specific language out of Moutet is that the test is would the skilled artisan be led in a direction divergent from the path that was taken by the applicant. So there has to be something in the original reference, in this case Clemens, that would lead the skilled artisan towards the path taken in the 116 patent. We don't have that. This is Judge Stoll. I hear what you're saying, but the test, regardless, the question you're asking us to review is a factual issue, right? And the board found differently in its factual conclusion. So why isn't there substantial evidence to support that finding? I believe that the board erred in its analysis because it only looked to the discrediting aspect of a teaching away analysis and it didn't look to the appropriate prong of that test. Because Clemens doesn't set forth any path to follow which leads to the direction of the 116 patent, it was inappropriate to look for discrediting of a path that's not laid out in the reference. They didn't apply the correct test which was to look at the record evidence to find what a person of skill in the art reading Clemens would be, what path they would be leading. So... In their analysis of the motivation to combine... Can I ask you another question? In the board's analysis of the motivation to combine, did it not consider whether Clemens would lead somebody down this path? I thought that it did. Just in its analysis of the motivation to combine. Well, in the board's analysis of the motivation to combine, it's flawed for a number of reasons and in every aspect fails substantial evidence review. I don't know that it actually addressed this issue. The main reason that the board cites for finding a motivation to combine is that it incorrectly relies on the petitioner's expert stating that Clemens is a large truck. There's no record evidence to support that. It's untethered from the evidence. In fact, it's even contradicted by what Clemens says. And the board jumps from Clemens being large to then having the NLB stripe jet added as a secondary vehicle. Again, when NLB doesn't teach that it's a secondary vehicle and doesn't teach that you could combine it with anything, it relies solely on the assertions of the petitioner's expert. And then from there, it says, well, looking at NLB, then you have a motivation to remove roadway markings. They say an ordinary skilled artisan would combine NLB with Clemens to increase Clemens' capabilities so that it could remove such coatings. Right? I think that's the rationale that was provided. I think that's the last portion of what they say. And that's actually directed to changing the parts of the Clemens reference, the pump of Clemens, with one of the pumps of the NLB stripe jet or star jet references. However, by the time the board has already gotten there, that rationale makes no sense either, because if we've already gotten to that point, and we contend that we should not have even gotten there, but if we've already gotten to the point of combining Clemens and NLB to create the two-vehicle system, then the NLB stripe jet already has the ultra-high pressure water pump. There would be no motivation to then also change Clemens. But I think that also in the general principle, this court has said in many occasions that the general idea to make something better or to increase capabilities is not a motivation that survives substantial evidence review. So if we go back to the motivation, I think that the board's analysis fails substantial evidence review on this point for several reasons, but most critically because it incorrectly observes that the NLB stripe jet is disclosed as a secondary, non-self-contained vehicle when the reference itself specifically says that it's a self-contained vehicle. And that critical finding, as well as the adoption of Mr. Booz's testimony that the stripe jet lacks certain components, such as a water tank and its own pump, make the combination illogical and unsupported. I see that I'm about to hit my 12 minutes, so if there are no more questions, I'll leave you there for the rest of my time. That's fine. Let's hear from the Patent Office. Counsel? Good morning, Your Honor, and may it please the court. Water blasting is not entitled to a patent for reordering non-components. Ms. Cenk, can I? This is Judge Crow. Can I sort of pick you up just where your friend left off, which is the fact that the truck and the tractor systems in the prior art were complete and independent systems. So one solution is to just have the two types of systems for two types of jobs. So where is there the inherent motivation to combine the two where they operate and function independently in the prior art? Thank you, Your Honor. My answer would be that the two systems are complete systems, that is true, but the Clemens system doesn't have the ability to remove road coatings. And so what the board said, crediting Mr. Booz for this particular aspect of the combination, is that a person of skill in the art looking at Clemens and NLB would notice that NLB could add the ability to remove road coatings to the cleaning system of Clemens. So it's true that they are both complete systems, but they are different. Does that answer your question? Well, I guess so, but if you have two completely separate things and they each operate and perform a separate function, I guess you could say that about anything. Well, just combining, you know, you could combine any two different things that do separate functions into one. Is there anything more that would drive the combination? They are both cleaning systems, so they are related systems. And water blasting doesn't argue that they're in different fields of endeavor. So it is the board's finding that somebody, a person of skill in the art looking at both systems, could see adding one aspect to the other, the aspect of the NLB removing road coatings to Clemens to increase its ability. Why? Why would someone want to remove road coatings? Is that what you're asking? Yeah. Well, why would they want to combine it? I mean, they can perform the function with another device. So why, where's the motivation to combine the two into one? Well, somebody looking at, a person of skill in the art looking at Clemens, we know from Mr. Booth and the boards crediting Mr. Booth, would see from NLB, the NLB reference, that a small tractor could access more areas. So that's sort of another reason to combine the two, is that the small tractor could get into areas that require a tight turning radius. So there are sort of two reasons why one would want to combine those systems. And one is to add a tractor to this big cleaning system so that you could get into smaller areas and also to add this ability to do one more thing, which is remove the stripes. Where do you, this is Judge Bryson, where do you find though, and I'm really coming back to Chief Judge Prost's question, where do you find in either of those references, setting aside the difference between cleaning and blasting to remove the stripes, where do you find the indication that a two vehicle device can be used? Well, I have two answers to that. First, the NLB reference talks about two different vehicles, the truck and the tractor. It doesn't talk about connecting the two. When you say the truck and the tractor, you mean the stripe jet and the star jet? Correct, yes. But they're not connected, right? That's correct. There's no place in which it suggests that you could put them together. Not in the NLB reference, no. You had a second answer. I'm sorry, just very quickly. The second answer is that we know from the patent itself, the 116 patent, that both of those things not only existed, I'm looking at Appendix 79 in Column 2, which was discussed in the record quite a bit, that not only did the water jetting truck and the water jetting tractor, not only were they both commercially available, but in the patent itself it says that the Blasters appears to have a four-wheeled tractor similar to a grass mower, which supports a driver and is connected to a prime mover by high-pressure lines for delivery of high-pressure water to the blast head. So the patent itself acknowledges that there was commercially available a truck and a tractor somewhere. Where exactly were you reading from? That is Appendix 79, Column 2, the second full paragraph in the second sentence. This is where it talks about the available commercial systems from Blasters and NLB. And that discussion starts a little bit earlier. Are you saying Column 2, Line 11 or 10? Yes, the paragraph starts at Line 8 and starting at Line 11-ish, it talks about a tractor that's connected to a truck, which they call a prime mover in the patent. So to answer your question, Judge Bryson, NLB doesn't specifically say you should connect the two, but we know that the two things were commercially available and in some way those two things were connected in some commercial thing. Let me ask you one other question about NLB. I noticed that both the Stripe Jet and the Star Jet reference an optional vacuum recovery system to contain water and debris. And that's at Appendix 188. And then on Page 189 is a picture of the Star Jet, which references the truck and appears to have a connected second vehicle that is referred to as the water supply, which is being towed by the truck. Is it your contention that that is a disclosure of a two-vehicle system? No, that water supply trailer, what it looks like a trailer, it doesn't look like a tractor, although... No, what I guess I'm asking is the general concept of dividing the functions between two separate vehicles to the extent that that's some indication of a motivation, is that, do you think, disclosed by Stripe Jet and Star Jet? Yes, I do think that that's NLB. And in other places in the record there is some discussion of towing the water tank because the water tanks are quite large. So I do think that's known in the prior... Well, go ahead. Okay, I will just continue with my earlier... Okay, so as we were discussing, high-pressure water jetting systems were already commercially available at the time of filing, both in the form of large trucks and tractors. And as I said, the 116 patent does quickly discuss a commercial version of a tractor connected to a truck. And the Clemens reference is a water jetting truck that's carrying a large storage tank and the pumps and a blast head connected to the front. And the Stripe Jet is a water jetting tractor that removes road coatings with a blast head and high-pressure water and vacuum pumps. Water blasting does not assert that combining the truck and the tractor are beyond the skill of a person of ordinary skill in the art. This invention simply rearranges things that are already in the prior art, each component doing the same thing that it did before. And like the combination of old elements in Anderson's Black Rock, the combination does not add anything to the nature and the quality of the systems that are already known. So, does the court have any further questions? If not, I will yield the rest of my time. All right. Thank you. Thank you. Mr. Locke, didn't you have some rebuttal time available? Thank you, Chief Judge. If I could address the last point first, that the contention I hear from my friend is that the invention of the 116 patent is simply reordering known components without adding anything to the nature or quality of what's being invented. I think that the patent itself specifically addresses that. The two-vehicle system adds to the nature and to the quality because it incorporates aspects of the different systems to create something new. If we're to speak in this level of generalization of reordering known components, then that would negate pretty much every invention. What the prior art had were cleaning systems of various sizes. One of the critical inventive concepts here is it took distinct systems and created something new, a two-vehicle system, which allowed you to have the functionality of the larger systems while having the precision of the smaller systems. Mr. Lockson, what about the point that your opposing counsel makes that the two-vehicle system is effectively disclosed on column two at lines 11 and set? Thank you, Judge Bryson. I think that critical in that statement is that it doesn't actually disclose it. The statement is that there appears to be something in the prior art, but it's credited as being something that appears to be a product by Blasters, who was the petitioner in this action. If Blasters had such a product, such a product would have been referenced as prior art. Moreover, the petitioner, Mr. Booz, who is the owner of Blasters, testified that the prior art had never been combined in this way before. With respect to the two-vehicle idea, looking back at the NLB reference, I notice on the first page of the reference, this appears to be a brochure, appendix 187, there is both a large truck, a picture of a large truck with a small vehicle in front of it that's connected to the large truck by hoses and so forth, and also the stripe jet, which has a hose going from the stripe jet, seemingly off to some undetermined place, but it clearly is connected to something else, presumably a water source. And then on page 189, we have the picture of the star jet, which appears to be a two-vehicle device. Why doesn't that provide some indication that using two vehicles is something that was in the prior art? Thank you, Judge Bryson. If we could go back first, I guess, to appendix page 187. Your comment was with regard to the star jet shown there. Well, that shows both the star jet and the stripe jet. So in the large truck shown, the star jet, what you're looking at is an articulating link with a mobile blast head. All of these products have that mobile blast head, which has its own wheels so that it's not running across the ground itself. But that's not a separate vehicle on the star jet. And with regard to the stripe jet, what we see in the orange line, that's the line for the vacuum recovery, which, as the reference itself specifically addresses, is an optional recovery system. So we don't dispute that there can be this optional vacuum recovery. But even with that optional recovery, and even with the disclosure on appendix 189 of a trailer for a water tank, we still don't meet the limitations that the 116 patent had. And we can even look at the 116 patent, and it shows the potential of having a trailer behind the prime mover truck as well. The critical aspect here is that those trailers are not independently drivable vehicles, the way that the 116 patent claims the two independent vehicles, the large prime mover and the smaller tractor, where each are powered to drive independent of the other, but they are connected and cooperate together. Did I answer your question, Judge Rison? Thank you. Yes. You've exhausted your rebuttal. Yes, sir. Thank you. We thank both sides, and the case is submitted.